**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| NEW SOURCE ENERGY PARTNERS, L.P., *et. al.*, | Case No. 16-10642 (CSS) |
| Debtors. | Jointly Administered |
| | **Bidding Procedures Hearing Date: TBD – Expedited Relief Requested**<br>**Bidding Procedures Objections Due: TBD – Expedited Relief Requested** |
| | **Sale Hearing Date: TBD**<br>**Sale Objections Due: TBD – June 8, 2016 at 4:00 p.m. (ET) Requested** |

**MOTION OF DAVID W. CARICKHOFF, CHAPTER 7 TRUSTEE,
FOR ENTRY OF ORDERS (I) (A) ESTABLISHING BIDDING PROCEDURES
RELATING TO THE SALE OF THE DEBTORS' EQUITY INTERESTS IN CERTAIN
NON-DEBTOR SUBSIDIARIES; (B) ESTABLISHING PROCEDURES RELATING TO
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
RELATED TO THE EQUITY INTERESTS AND A MULTI-EMPLOYER
RETIREMENT PLAN; AND (C) SCHEDULING A HEARING TO CONSIDER THE
PROPOSED SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF
AND (II) (A) APPROVING THE PROPOSED SALE; (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS;
AND (C) GRANTING RELATED RELIEF**

David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the bankruptcy

estates ("Estates") of New Source Energy Partners, L.P. ("Energy L.P.") and New Source Energy

GP, LLC ("Energy GP" and collectively, with Energy L.P. the "Debtors"), hereby files this

motion (the "Motion") under sections 105(a), 363 and 365 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") for entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Bidding Procedures Order"): (i) approving the proposed bidding procedures (the "Bidding Procedures")[1]; (ii) approving certain notice procedures with respect to the Sale (as defined below); (iii) establishing procedures for the assumption and assignment of executory contracts related to the Equity Interests (as defined below) and the Assumed Retirement Plan (as defined below); (iv) approving the Expense Reimbursement (as defined below); (v) scheduling a hearing (the "Sale Hearing") to approve a sale (as described more fully below, the "Sale") of the Purchased Assets (as defined below) and assumption and assignment of executory contracts and approving the form and manner of notice thereof; and (vi) granting related relief (the "Bidding Procedures Relief").

The Trustee also hereby moves the Court, pursuant to Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004, and 6006 for entry of an order substantially in the form annexed hereto as **Exhibit B** (the "Sale Order"): (i) authorizing the sale of the Purchased Assets (as defined below) free and clear of all liens, claims, interests, and encumbrances; (ii) authorizing the Trustee to assume and assign executory contracts related to the Purchased Assets (as defined below) and the Assumed Retirement Plan (as defined below) to the Successful Bidder (as defined below); and (iii) granting related relief (collectively, the "Sale Relief").[2]  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

---

[1] A copy of the proposed Bidding Procedures is attached to the Bidding Procedures Order as **Exhibit 1**.

[2] This Motion contains the Trustee's request for approval of both the Bidding Procedures Relief and the Sale Relief. The Trustee is seeking approval of the Bidding Procedures Relief at the initial hearing to be conducted on this Motion; the Sale Relief is requested to be considered at the Sale Hearing.

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rule 6004-1.

## BACKGROUND

3.     On March 15, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

4.     David W. Carickhoff has been appointed as chapter 7 trustee of the Estates.

5.     The section 341(a) meeting of creditors was held and concluded on April 11, 2016.

6.     Prior to ceasing operations, the Debtors focused on the delivery of energy through streamlined operations and vertical integration.  The Debtors were actively engaged in the development and production of onshore oil and liquids that extended across conventional resource reservoirs in east-central Oklahoma.

7.     Debtor, Energy L.P. owns (i) 100% of the Class A Units (the "MCLP Equity Interests") of non-debtor subsidiary MidCentral Energy Partners L.P. ("MCLP") and (ii) 100% of the limited liability company membership interests (the "MCGP Equity Interests" and together with the MCLP Equity Interests, the "Equity Interests") of non-debtor subsidiary MidCentral Energy Partners GP, LLC ("MCGP" and together with MCLP, the "Non-Debtor

Subsidiaries"). The Non-Debtor Subsidiaries engage in oilfield services that specialize in increasing efficiencies and safety in drilling and completion processes.

8. The Non-Debtor Subsidiaries' liabilities exceed the value of their assets and they continue to suffer significant operating losses. In particular, with respect to MCLP, such losses aggregated approximately $840,000 (excluding debt service to its lenders) for the first quarter of 2016. Absent an expedited sale of the Equity Interests (and the infusion of new capital), the Non-Debtor Subsidiaries will have to cease operations. The Trustee believes that the Equity Interests must be sold now in order to preserve any value of these assets for the benefit of the Estates.

9. Trustee has engaged Giuliano, Miller & Company, LLC ("GMC") as Financial Advisor to, among other things, assist the Trustee with administering these cases and liquidating estate assets, including the Equity Interests.

10. An asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA"), dated as of May 10, 2016, has been entered into between the Trustee, on behalf of the Debtors' estates and MCE Acquisition, LLC (the "Stalking Horse Bidder")[3]. The Stalking Horse APA contemplates, among other things, a sale of Energy L.P.'s right, title and interests in the Equity Interests and an assumption and assignment of the New Source Energy Partners Retirement Savings Plan (the "Assumed Retirement Plan")[4] to the Stalking Horse Bidder or its designee. A copy of the Stalking Horse APA is attached hereto as **Exhibit C**.

---

[3] The bid of the Stalking Horse Bidder as set forth in the Stalking Horse APA is referred to herein as the "Stalking Horse Bid".

[4] The Assumed Retirement Plan, the Equity Interests and the other assets to be acquired by way of the Stalking Horse APA are collectively referred to herein as the "Purchased Assets".

11.     The Stalking Horse APA further provides that, subject to Court Approval as part of the Bidding Procedures Order, the Stalking Horse Bidder will be entitled to an expense reimbursement of up to $25,000 in certain circumstances (the "Expense Reimbursement"). Because the Stalking Horse Bidder is an insider of the Debtors, it is not seeking any break up or similar fee.

12.     Finally, recognizing the exigencies associated with this sale, the Stalking Horse APA requires: (i) entry of a Bidding Procedures Order approving the Bidding Procedures Relief within 21 days of the Effective Date of the Stalking Horse APA and (ii) entry of a Sale Order approving the Sale Relief within 40 days of the Effective Date of the Stalking Horse APA.

13.     Upon execution of the Stalking Horse APA, the Trustee, with the assistance of his professionals, including GMC, immediately began marketing the Purchased Assets to parties that the Trustee believes may have an interest in such assets.  The Trustee expects to conduct a marketing process of approximately 30 days, thereby setting the Bid Deadline as of June 8, 2016.  The Trustee requests that a Sale Hearing be scheduled shortly thereafter at the earliest convenience of the Court.

## RELIEF REQUESTED

14.     By this Motion, the Trustee seeks entry of the Bidding Procedures Order granting the Bidding Procedures Relief, which includes, (i) approving the Bidding Procedures to be used to solicit the highest or otherwise best offer for the Purchased Assets; (ii) approving certain notice procedures with respect to the Sale; (iii) establishing procedures for the assumption and assignment of executory contracts related to the Purchased Assets (including the Assumed Retirement Plan); (iv) approving the Expense Reimbursement; and (v) scheduling the Sale Hearing.

15.     By this Motion, the Trustee also seeks approval of the successful bid after completion of the bidding process.  The Motion seeks the customary relief in connection with the sale of the Purchased Assets assets free and clear of liens, claims and encumbrances.

16.     Following completion of the sale process, the Trustee intends to request entry of a Sale Order: (i) approving the sale of the Purchased Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Liens") (with such Liens attaching to the proceeds of sale in the same order of priority and to the same extent as such Liens were valid, perfected and enforceable prior to entry of the Sale Order), to the Successful Bidder and (ii) (b) authorizing the Trustee to assume and assign certain executory contracts related to the Purchased Assets (including the Assumed Retirement Plan) to the Successful Bidder after the Closing Date (as defined below).

**The Proposed Bidding Procedures**

17.     The Trustee seeks approval of the Bidding Procedures, which have been designed to be flexible and open to all bids for the Purchased Assets in order to facilitate a robust sales process thereby generating the greatest value for the Estates.

18.     The Trustee proposes the following timeline for solicitation of bids, the Sale and Sale Hearing.  The timeline is driven by the limited funds of the Estates to fund a sale process.

    i.   Bid Deadline:  June 8, 2016 at 5:00 p.m. (ET)

    ii.  Auction (if necessary):[5]  June __, 2016 at 10:00 a.m. (ET)

    iii. Proposed Sale Objection Deadline: June 8, 2016 at 4:00 p.m. (ET).

    iv.  Proposed Sale Hearing: June __, 2016 at ___ a.m. (ET).

---

[5] As set forth in the Bidding Procedures, an auction will only be held if there is one or more Qualified Bidder (as defined below), other than the Stalking Horse Bidder.

19.     The Bidding Procedures describe, among other things, the requirements and manner in which bidders and bids become "qualified," the coordination of due diligence efforts, the receipt and negotiation of bids received, and the selection and approval of any ultimately successful bidders (the "Bidding Process").

20.     Set forth below is a summary of certain key terms of the Bidding Procedures:[6]

    i.  Due Diligence:  To participate in the Bidding Process and receive access to due diligence, a party must submit to the Trustee (i) an executed confidentiality agreement in form and substance reasonably acceptable to the Trustee and the Stalking Horse Bidder (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction for the Purchased Assets. A party who qualifies for access to Diligence Materials shall be an "Interested Bidder." The Trustee will afford any Interested Bidder the time and opportunity to conduct reasonable due diligence under the time constraints; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline

    ii.  Participation and Bid Requirements: To ensure that only bidders with a serious interest in purchasing the Purchased Assets participate in the Bidding Process, the Bidding Procedures provide for certain minimal requirements for  potential bidder to become a "Qualified Bidder".  These requirements, which are set forth more fully in the Bidding Procedures, include (i) execution of a confidentiality agreement before participating in the due diligence process; (ii) providing the Trustee with certain corporate information regarding the bidder and certain financial assurances as to such bidder's ability to close a transaction for the Purchased Assets; (iii) submission of a binding proposal regarding the Purchased Assets and the consideration to be paid; and (iv) a good faith deposit in the amount of ten percent (10%) of the proposed purchase price.  The Stalking Horse Bid is to be considered a Qualified Bid and the Stalking Horse Bidder is to be considered a Qualified Bidder for all purposes and requirements pursuant to the Bidding Procedures, and shall be deemed to have satisfied all of the requirements that a Bidder must satisfy to be a Qualified Bidder under the Bidding Procedures.

    iii.  The Auction:  If at least one Qualified Bid other than that of the Stalking Horse Bidder is received by the Bid Deadline, the Trustee will hold an

---

[6] This is meant to be summary in nature only.  In the event of any inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall control.

auction shortly after the Bid Deadline[7] at the offices of Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801. Only Qualified Bidders who have submitted Qualified Bids and their representatives and counsel may participate in the auction. If the Trustee does not receive any Qualified Bids other than the Stalking Horse Bid: (a) the Trustee will not hold an Auction; (b) the Stalking Horse Bid will be the Successful Bid and the Stalking Horse Bidder will be named the Successful Bidder; and (c) the Trustee will proceed to request at the Sale Hearing (as defined below) that the Court approve the Sale Transaction in accordance with the Stalking Horse APA, including that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Bankruptcy Rules.

iv.   <u>Selection of Successful Bid</u>: At the conclusion of the auction, the Trustee, in consultation with his professionals, will determine the highest or otherwise best Qualified Bid for the Purchased Assets (the "<u>Successful Bid</u>" and, the Bidder submitting such Successful Bid, the "<u>Successful Bidder</u>") and the next highest or next best Qualified Bid (the "<u>Backup Bidder</u>").

v.    <u>Evaluation of Qualified Bids</u>: The determination of which Qualified Bid is to be selected as the Successful Bid will take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the Estates and may include, but are not limited to, the following: (a) the amount of the consideration and the resulting recovery to holders of general unsecured claims; (b) the number, type and nature of any changes to the Stalking Horse APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Estates of such modifications or delay; (d) the total consideration to be received by the Estates, including the assumption of any liabilities of the Estate; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to Estates.

vi.   <u>Sale Hearing</u>: The Trustee requests that a Sale Hearing take place on June 15, 2016, or such other time that is convenient to the Court.

21.   Other Highlighted Terms Under Local Rule 6004-1(b)(iv):[8]

---

[7] The specific date and time for the Auction will be set forth in the Sale Notice (as defined below) and the Bidding Procedures.

[8] This section only highlights those disclosures required by the Local Rules that (i) are not made in other sections of this Motion and (ii) that are relevant to a sale of the Debtors' equity interests in a non-debtor subsidiary.

i.  <u>Local Rule 6004-1(b)(iv)(A)</u>. The Stalking Horse Bidder is an insider of the Debtors. The Stalking Horse Bidder is indirectly owned by Kristian B. Kos ("<u>Kos</u>") and Dikran Tourian ("<u>Tourian</u>"). Kos and Tourian are each officers of MCLP, the non-debtor subsidiary of Energy L.P. Kos and Turian also indirectly own, through investment entities, 100% of the Class B units issued by MCLP. Additionally, Kos indirectly owns, through investment vehicles, 51% of the equity in Debtor Energy GP, the general partner of Debtor Energy L.P. Until February 10, 2016, Kos was Chief Executive Officer and Tourian was Chief Operating Officer of Energy GP, and both Kos and Tourian were members of the Energy GP board of directors.

Kos and Tourian, solely in their capacities as officers of MCLP, have entered into a binding side letter with the Trustee, whereby they have agreed to use their reasonable best efforts to (i) provide Interested Bidders and their representatives access to the books and records and properties of the Non-Debtor Subsidiaries, (ii) to provide Interested Bidders with information related to the Sale Transaction and (iii) address questions and diligence items related to the Sale Transaction.

ii.  <u>Local Rule 6004-1(b)(iv)(C)</u>. The Bidding Procedures Relief does not include the granting of any release in favor of any entity.

iii.  <u>Local Rule 6004-1(b)(iv)(F)</u>. The Trustee is requiring Qualified Bids to include a ten percent (10%) good faith deposit.

iv.  <u>Local Rule 6004-1(b)(iv)(H)</u>. The Trustee is not seeking to release any sale proceeds without further order of the court.

v.  <u>Local Rule 6004-1(b)(iv)(I)</u>. The Trustee is not seeking to have the Sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

vi.  <u>Local Rule 6004-1(b)(iv)(J)</u>. The Trustee will retain the Debtor's books and records to enable him to administer the Estates.

vii.  <u>Local Rule 6004-1(b)(iv)(K)</u>. The Trustee is not seeking to sell avoidance actions.

viii.  <u>Local Rule 6004-1(b)(iv)(L)</u>. The Trustee is seeking to sell the Purchased Assets free and clear of successor liability claims.

ix.  <u>Local Rule 6004-1(b)(iv)(M)</u>. The Trustee is seeking to sell the Purchased Assets free and clear of all liens, claims and encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code.

x. <u>Local Rule 6004-1(b)(iv)(O)</u>. The Trustee is seeking relief from the fourteen-day stay imposed by Bankrutpcy Rule 6004(h) for any sale.

**The Proposed Sale Notice Procedures**

22. <u>Sale Notice</u>. As soon as reasonably practicable after receiving a date for the Sale Hearing, the Trustee will serve a notice of the sale substantially in the form annexed Bidding Procedures Order as **Exhibit 2** (the "<u>Sale Notice</u>") by first-class mail, postage prepaid, upon (i) the Office of the United States Trustee for the District of Delaware; (ii) Counsel to Bank of Montreal, as administrative agent (the "<u>Prepetition Agent</u>") for the lenders (the "<u>Prepetition Lenders</u>") under that certain Credit Agreement, dated as of February 13, 2013 between Energy LP, the Prepetition Agent and the Prepetition Lenders; (iii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Purchased Assets; (iv) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Purchased Assets; and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b). Such notice shall be sufficient and proper notice of the sale with respect to known interested parties.

**The Proposed Notice of Assumption and Assignment of Contracts**

23. As part of the Sale, the Trustee seeks authority to assume and assign certain executory contracts related to the Purchased Assets (including the Assumed Retirement Plan) to the Successful Bidder (the "<u>Assumed Contracts</u>").

24. With respect to any Assumed Contract, the Trustee will file with the Court and serve on each party to an Assumed Contract a notice substantially in the form annexed Bidding Procedures Order as **Exhibit 3** (the "<u>Cure Notice</u>") setting forth the amount of cure owed thereunder according to the Debtors' books and records. The Cure Notice shall state (i) the cure amount that the Trustee believes is necessary to assume such contract or lease pursuant to

the Bankruptcy Code section 365 (the "Cure Amount"), (ii) notify each party that such party's contract shall assumed and assigned to the Successful Bidder, and (iii) state the deadline by which the non-Debtor party shall file an objection to the Cure Amount (the "Cure Objection Deadline").

25.     Any objection to the Cure Amount must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (iii) state with specificity what cure the party to the Assumed Contract believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document as of the date of the Cure Notice. Any objections not resolved between the parties shall be set for a hearing as fixed by the Court.

26.     Any counterparty to any Assumed Contract who does not file a Cure Objection by the Cure Objection Deadline, shall be forever barred and estopped from objecting to the Cure Amount or asserting or claiming against the Trustee or any Successful Bidder that any Cure Amount (other than the Cure Amount listed on the Cure Notice) is due or condition to assumption and assignment must be satisfied under such Assumed Contract.

27.     Any objection to the assumption and  to the assumption and assignment of any Assumed Contract to the Successful Bidder ("Assumption and Assignment Objection"), including any objection based on lack of adequate assurance of performance of the contract by the Successful Bidder must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (iii) state with specificity the legal and factual basis for such objection.

28. Any counterparty to an Assumed Contract who does not file a timely objection Assumption and Assignment Objection shall be deemed to have consented to the assumption and assignment of its Assumed Contract to the Successful Bidder and will be forever barred and estopped from objecting to such assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds.

## BASIS FOR RELIEF REQUESTED

**A.    Entry Of The Bidding Procedures Order Is Necessary And Appropriate Under The Facts And Circumstances Of This Case.**

*The Bidding Procedures Should Be Approved*

29. After notice and a hearing, a trustee may sell assets outside the ordinary course of business. 11 U.S.C. § 363(b). Generally, to obtain approval of a proposed sale of assets under section 363(b), a trustee should demonstrate that the proffered purchase price is the highest or best offer under the circumstances of the case. See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

30. The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside the ordinary course of business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest or best recovery for a debtor's estate. The proposed Bidding Procedures and the opportunity for competitive

bidding embodied therein are both reasonable and designed to maximize the value received for the Purchased Assets by facilitating a competitive bidding process in which all potential and qualified bidders are encouraged to participate and submit competing bids.

31.    The Trustee desires to receive the greatest value possible for the Purchased Assets.  The Bidding Procedures were developed so as to be consistent with the Trustee's need to expedite the sale process but with the object of promoting active bidding that will result in the highest and/or best offer(s) possible

32.    In the event one or more Qualified Bids are received by the Bid Deadline, the Trustee may select the highest and/or best Qualified Bid(s) for some or all of the Purchased Assets after conducting an auction.    **ALL BID(S) SHALL BE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT.**

33.    Given the current circumstances of these cases, the Trustee believes that implementation of a prompt sale process is the best way to maximize the value of the Purchased Assets.  Prompt entry of the Bidding Procedures Order will permit the sale process contemplated by the Bidding Procedures to begin as expeditiously as possible.

*The Expense Reimbursement Should be Approved*

34.    As Part of Bidding Procedures Order, the Trustee is also requesting approval of the Expense Reimbursement on the terms and conditions set forth in the Stalking Horse APA.  The Stalking Horse Bidder conditioned its willingness to serve in such capacity on the inclusion of the Expense Reimbursement in the Stalking Horse APA.

35.    Approval of expense reimbursements and other forms of bid protections in connection with asset sales pursuant to section 363 of the Bankruptcy Code is an established practice.  In the Third Circuit, bid protections are considered administrative expenses and,

13

therefore, the payment of such fees must provide a postpetition benefit to the bankruptcy estate. See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 191 F.3d 527, 533 (3d Cir. 1999).

36.    By participating in negotiations for a potential transaction and entering into the Stalking Horse APA, the Stalking Horse Bidder has established a bid standard, including a price floor, and initiated a legitimate sale process which the Trustee hopes will serve as a catalyst for other bidders.  The Trustee is now in a favorable position to solicit competing bids for the Purchased Assets.  In short, the Stalking Horse Bidder has provided a postpetition benefit to the Estates.  As such, the Expense Reimbursement is an actual and necessary cost of preserving the estates and should be approved as an administrative expense within the meaning of sections 503 and 507 of the Bankruptcy Code.

**B.    Notice Of The Proposed Sale Is Reasonable Under The Circumstances.**

37.    In order to receive the highest and/or best price for the Purchased Assets under the circumstances, the Trustee is seeking to conduct the Sale and hold the Sale Hearing on an accelerated track.  In order to yield the greatest possible return for the benefit of creditors and to limit potential administrative expenses, the Trustee believes that an expedited sale process is warranted and necessary.

38.    Following entry of the Bidding Procedures Order, the Trustee will provide notice of the Bidding Procedures Order, the Bidding Procedures, the Sale Hearing, and the Sale Objection Deadline.  The Trustee proposes to send the Sale Notice, substantially in the form attached to this Motion as **Exhibit C**, to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition Agent; (iii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Purchased

Assets; (iv) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Purchased Assets; and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).

39.     Accordingly, the Trustee submits that the notice to be provided to parties in interest is reasonable and appropriate and will be adequate to ensure that the value of the Purchased Assets has been tested in the marketplace.

**C.     The Proposed Sale Of the Purchased Assets Should Be Approved As A Product Of The Trustee's Exercise Of Sound And Reasonable Business Judgment.**

40.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

41.     This Court should approve the proposed sale if the Trustee demonstrates a sound business reason or justification in support thereof. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 179 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (section 363 sale should be approved if "the proposed sale is fair and equitable, ...a good business reason [exists] for completing the sale and the transaction is in good faith"); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983).

42.     Here, the proposed sale procedures and proposed sale of assets easily meet the "sound business reason" test and it is clear the proposed sale is necessary to preserve the value of the Purchased Assets. First, the fairness and reasonableness of the consideration to be paid for the Purchased Assets will be demonstrated by continued exposure of the opportunity to

the marketplace via the sale process proposed herein, on notice to potential purchasers, creditors, and other parties in interest.  Any proposed purchase agreement(s) will be the product of good faith, arm's length negotiations between the Trustee and the highest and/or best bidder(s) with respect to the price and other terms of the sale(s) of the Purchased Assets.  In short, the Trustee believes that a prompt sale of the Purchased Assets to any Successful Bidder(s) presents the best opportunity to realize the maximum value of the assets.

**D.    The Sale of the Purchased Assets Should Be Approved Free And Clear Of Liens Pursuant to Section 363(f) Of The Bankruptcy Code.**

43.    Pursuant to section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Purchased Assets free and clear of all Liens, with such Liens to attach to the proceeds of the sale in the same order of priority, and to the same extent as such Liens were valid, perfected, and/or enforceable immediately prior to the sale.  Section 363(f) of the Bankruptcy Code is written in the disjunctive and provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

44.     A sale free and clear of Liens is necessary to maximize the value of the Purchased Assets.  A sale subject to Liens would result in a lower purchase price and be of substantially less benefit to the bankruptcy estate.  A sale free and clear of Liens is particularly appropriate under the circumstances because any Lien that exists immediately prior to the closing of any sale will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest.  The Prepetition Agent consents to the proposed sale on behalf of itself and each Prepetition Lender.  Moreover, any holder of a Lien that receives notice of the proposed sale and which fails to object should be deemed to consent to the proposed sale, thereby complying with section 363(f)(2) of the Bankruptcy Code.  Thus, the proposed sale(s) satisfies section 363(f) of the Bankruptcy Code.

**E.      The Court Should Approve The Assumption And Assignment Of Executory Contracts Related to the Purchased Assets**

45.     Under section 365 of the Bankruptcy Code, a trustee may assume, reject, or assume and assign executory contracts.

46.     In accordance with section 365(a), a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection.  See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).  The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate."  Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel

Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting In re Stable Mews Assoc., Inc., 41

B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

      47.    Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for

a trustee to assume an executory contract or unexpired lease.  This subsection provides:

> (b) (1)    If there has been a default in an executory
> contract or unexpired lease of the debtor, the trustee may not
> assume such contract or lease unless, at the time of assumption of
> such contract or lease, the trustee -
>
> > (A)    cures, or provides adequate assurance that
> > the trustee will promptly cure, such default;
> >
> > (B)    compensates, or provides adequate
> > assurance that the trustee will promptly compensate, a party
> > other than the debtor to such contract or lease, for any
> > actual pecuniary loss to such party resulting from such
> > default; and
> >
> > (C)    provides adequate assurance of future
> > performance under such contract or lease.

11 U.S.C. § 365(b)(1).

      48.    With respect to assignment of an executory contract or unexpired lease,

Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of
> the debtor only if --
>
> > (A)    the trustee assumes such contract or lease in
> > accordance with the provisions of this section; and
> >
> > (B)    adequate assurance of future performance by
> > the assignee of such contract or lease is provided, whether
> > or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

      49.    The meaning of "adequate assurance of future performance" depends on

the facts and circumstances of each case, but should be given "practical pragmatic construction."

EBG Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992).   Adequate assurance does not mean absolute assurance or a guarantee that the assignee will thrive and make all payments required under the subject contract.  See In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D. N.Y. 1985).

50.    Among other things, adequate assurance may be provided by demonstrating the proposed assignee's financial health and experience in managing the type of enterprise or property assigned.  See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

51.    The Trustee requests that any counterparty that wishes to file an objection to the Cure Amount (the "Cure Amount Objection") must do so (and serve a copy so as to be received by the Notice Parties) by 4:00 p.m. (Eastern) within 15 (fifteen) business day after the filing of the Cure Notice.

52.    If no timely Cure Amount Objection is received, the Trustee seeks entry of an order providing that such non-debtor party (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Contract, and the Trustee and the Successful Bidder shall be entitled to rely solely upon the Cure Amount; and (b) be deemed to have consented to the assumption and assignment of such Assumed Contract and shall be forever barred and estopped from asserting or claiming against the Trustee or the Successful Bidder that any additional amounts are due, that any defaults exist, or that any other conditions or obligations related to assumption and assignment must be satisfied prior to such assumption and assignment becoming effective.

53.     In the event that a timely Cure Amount Objection is filed, the Cure Amount Objection must set forth (i) all grounds for the objection and (ii) the amount the party asserts to be the correct Cure Amount.  After receipt of the Cure Amount Objection, the Trustee and the Successful Bidder will attempt to reconcile any differences in the Cure Amount.  If agreement cannot be reached, the Court will resolve the disputed issues at a hearing scheduled by the Court.

**F.      The Automatic Fourteen Day Stay Under Bankruptcy Rule 6004(h) and 6006(d) Should Be Waived.**

54.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.  *See* Fed. R. Bankr. P. 6004(h). Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of executory contracts or unexpired leases are automatically stayed for fourteen days after entry of the order.

55.     Although Bankruptcy Rule 6004(h) and 6006(d) and the Advisory Committee Notes thereto are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier on Bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure.  10 *Collier on Bankruptcy* ¶ 6004.09 (15th ed. 1999).  Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  *Id.*

56.     To preserve and maximize the value of the Purchased Assets, the Trustee seeks to close the Sale immediately after all closing conditions have been met or waived.  Thus,

waiver of any applicable stays afforded by the Bankruptcy Rules is appropriate under the facts and circumstances of this case.

## NOTICE

57.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) Counsel to the Prepetition Agent; (iii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Purchased Assets; (iv) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Purchased Assets; and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is necessary or required prior to entry of the proposed Bidding Procedures Order and proposed Bidding Procedures.

## NO PRIOR REQUEST

58.     No prior motion for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of: (A) an order substantially in the form annexed as **Exhibit A** hereto (i) approving the Bidding Procedures; (ii) approving certain notice procedures with respect to the Sale; (ii) scheduling the Sale Hearing; (iii) establishing procedures for the assumption and assignment of executory contracts related to the Purchased Assets (including the Assumed Retirement Plan); (iv) approving the Expense Reimbursement; and (v) granting such other and further relief as is just and proper; and (B) an order substantially in the form annexed as **Exhibit B** hereto (i) approving the sale of the Purchased Assets, and (ii) such other and further relief as is just and proper.

Dated:  May 10, 2016

By: /s/ Alan M. Root                .
Alan M. Root (No. 5427)
ARCHER & GREINER
A Professional Corporation
300 Delaware Avenue, Suite 1100
Wilmington, DE   19801
Telephone:  302-777-4350
Facsimile:  302-777-4352
Email:  aroot@archerlaw.com

*Attorneys for Chapter 7 Trustee*

114249628v2

22