**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| NEW SOURCE ENERGY PARTNERS, L.P., *et. al.*, | Case No. 16-10642 (CSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 27, 2016 at 12:00 p.m.**<br>**Related Documents: 50, 63, 66, 73** |

**JOINT RESPONSE OF DAVID W. CARICKHOFF, CHAPTER 7 TRUSTEE,**
**AND MCE ACQUISITION, LLC TO OBJECTION OF DANNY PICKELSIMER**
**TO THE POTENTIAL ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

David W. Carickhoff, as Chapter 7 trustee (the "Trustee") of the bankruptcy estates ("Estates") of New Source Energy Partners, L.P. ("Energy L.P.") and New Source Energy GP, LLC ("Energy G.P." and collectively, with Energy L.P. the "Debtors"), and MCE Acquisition, LLC ("MCE Acquisition") hereby jointly respond to the Objection of Danny Pickelsimer to the Potential Assumption and Assignment of Contracts [ECF #73] (the "Objection"):

**PRELIMINARY STATEMENT**

The Trustee proposes to sell Energy L.P.'s equity interests in two entities that, in turn, hold equity interests in MidCentral Energy Services, LLC ("MidCentral") to MCE Acquisition and, in connection with that sale, to assign to MCE Acquisition a Contribution Agreement and a 401k Plan. The Objection filed by Mr. Pickelsimer—who is a former owner and employee of MidCentral and a defendant in an action brought by MidCentral in Oklahoma

state court—was the sole objection received by the Trustee to the Sale Motion (as defined below).[1]

Mr. Pickelsimer does not oppose the sale of MidCentral to MCE Acquisition. Rather, in an attempt to bolster his litigation position in the Oklahoma action, Mr. Pickelsimer objects to the assignment of the Contribution Agreement—which contains a covenant not to compete with MidCentral's business that Mr. Pickelsimer has violated—to MCE Acquisition. Mr. Pickelsimer contends that the Contribution Agreement is non-assignable because it is not an executory contract and even if it were, it cannot be assigned under Section 365(c) of the United States Bankruptcy Code ("Bankruptcy Code").  Mr. Pickelsimer further contends that if the Contribution Agreement is executory, a cure amount equal to $1.3 million must be paid, and adequate assurance of future performance provided, to him before the Contribution Agreement can be assigned to MCE Acquisition.[2]

Mr. Pickelsimer's contentions are meritless.  As this Court has previously held, non-executory contracts are assignable under Section 363 of the Bankruptcy Code.  Moreover, the Contribution Agreement expressly permits the assignment of this contract with the consent of Kristian Kos and Dikran Tourian (the owners of MCE Acquisition), which consent has been provided.  Finally, as Mr. Pickelsimer well knows, the Earn-Out Amount to which he refers has no value and even if it had value would be payable only in equity interests in Energy L.P.,

---

[1]    The Office of the United States Trustee has provided certain informal comments to the proposed form of Sale Order but has not objected to the Sale Motion.  It is anticipated that the U.S. Trustee's comments will be resolved in advance of the Sale Hearing.

[2]    Mr. Pickelsimer also states that he is owed "his proportionate share of the value of the forfeited Common Units underlying the long-term incentive plan awards," but provides no argument in support. *See* Objection, ¶ 2.  Mr. Pickelsimer's alleged rights under Energy L.P.'s Long Term Incentive Plan, which have nothing whatsoever to do with either the proposed sale transaction or assignment of the Contribution Agreement, provide no basis for objection to the assignment of the Contribution Agreement to MCE Acquisition.

pursuant to the express terms of Section 3.01(b) of the Contribution Agreement (the very provision on which Mr. Pickelsimer relies in his Objection). *See* Objection, ¶ 9.

The Trustee clearly satisfies the standard for assignment of the Contribution Agreement under either Section 363 or Section 365 of the Bankruptcy Code. Mr. Pickelsimer's litigation ploy should be rejected by this Court and the assignment of the Contribution Agreement approved.

## BACKGROUND

### A.    Energy L.P.'s Acquisition of MidCentral

1.    In November 2013, Energy L.P. acquired all of the outstanding (a) limited partner interests in MCE LP, a Delaware limited partnership ("MCLP Interests"), and (b) equity interests in MCE GP, LLC, a Delaware limited liability company ("MCGP Interests")[3] and the sole general partner of MCE LP[4] from MCE LLC ("Contributor"), a Delaware limited liability company. MCE LP, one of the Acquired Companies, owns all of the outstanding equity interests in MidCentral. The transaction was implemented through a Contribution Agreement, dated November 12, 2013, by and among (i) Energy, L.P., as Acquirer, (ii) MCE LLC, as Contributor, and (ii) Kristian Kos, Dikran Tourian, Danny R. Pickelsimer, Antranik Armoudian, Deylau, LLC, and Signature Investments, LLC ("MCE Owners").[5] In addition to being an MCE Owner, Mr. Pickelsimer was employed by MidCentral.

2.    In exchange for payments made and other consideration provided to each

---

[3]    The names of MCE LP and MCE GP, LLC subsequently were changed to MidCentral Energy Partners L.P. and MidCentral Energy Partners GP, LLC, respectively. The Equity Interests of these entities are subject to the pending sale.

[4]    MCE LP and MCE GP, LLC are referred to as the "Acquired Companies" herein.

[5]    A copy of the Contribution Agreement is attached as Exhibit "A" hereto.

of the MCE Owners, and to protect MidCentral's business after the sale, Mr. Pickelsimer agreed to a covenant not to compete that prohibited him from, among other things, engaging in competing businesses within certain geographical limitations relevant to MidCentral's business for three years following the closing of the transaction (the "Noncompete Clause"). *See* Contribution Agreement, § 9.01. Mr. Pickelsimer remained employed by MidCentral as its Vice-President, Business Development after the transaction closed.

### B.    The Pending State Court Action.

3.    In July 2015, Mr. Pickelsimer voluntarily resigned from his position at MidCentral and joined Allegiant Energy Services, LLC ("Allegiant"), which is engaged in the same business (energy-industry services provider) as MidCentral. Some months later, MidCentral became aware that, beginning in November 2015, Mr. Pickelsimer had been poaching employees and customers of MidCentral on behalf of Allegiant. MidCentral filed an action against Mr. Pickelsimer and Allegiant in the District Court of Oklahoma County (the "State Court Action") seeking damages for breach of the Noncompete Clause in the Contribution Agreement as well as other relief.[6] On June 3, 2016, Mr. Pickelsimer filed a motion to dismiss the State Court Action on the ground, among others, that MidCentral lacks standing to enforce the Noncompete Clause against him under the Contribution Agreement.

### C.    The Proposed Asset Sale

4.    On March 15, 2016 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. David W. Carickhoff was appointed as Chapter 7 trustee of the Estates.

---

[6]    *MidCentral Energy Partners, LP v. Pickelsimer*, CJ 2016-19224 (RSH). A copy of the Verified Petition filed in the State Court Action is attached as Exhibit "B" hereto.

5.      On May 10, 2016, the Trustee filed a motion for entry of orders (a) establishing bidding procedures for the sale of the MCLP Interests and the MCGP Interests held by Energy L.P., and the assignment of the Debtors' 401k Plan and the Contribution Agreement, to MCE Acquisition, which is indirectly owned by Kristian B. Kos and Dikran Tourian (officers of MCLP, Energy L.P.'s subsidiary), and (b) approving the sale of the MCLP Interests and the MCGP Interests to the winning bidder following the Trustee's marketing of the assets and an auction, if necessary ("Sale Motion") [ECF #50].   Pursuant to the Bidding Procedures Order entered by the Court [ECF #63], the deadline for the submission of competing bids and objections to the sale transaction and proposed sale order was June 15, 2016.   No competing bids were submitted to the Trustee.  Mr. Pickelsimer's Objection, which objects only to the assignment of the Contribution Agreement to the MCE Acquisition, was the sole objection made to the Sale Motion.  The hearing to approve the sale is scheduled for June 27, 2016 (the "Sale Hearing").

6.      The Objection is a meritless litigation tactic.   Mr. Pickelsimer's non-bankruptcy goal is clear: by seeking to prevent the transfer of Energy L.P.'s rights under the Contribution Agreement to MCE Acquisition, Mr. Pickelsimer hopes to strengthen his standing arguments in the State Court Action.   As discussed below, the Contribution Agreement is assignable by Energy L.P. to MCE Acquisition and no cure payments are due to Mr. Pickelsimer. The Objection should be overruled.

## ARGUMENT

**A.      The Contribution Agreement Can Be Transferred to MCE Acquisition.**

7.      Mr. Pickelsimer's primary argument is that the Contribution Agreement is not executory and thus cannot be assumed and assigned to MCE Acquisition under Bankruptcy

Code § 365, *citing In re West Electronics, Inc.*, 852 F.2d 79, 82-84 (3d Cir. 1988) as support.[7]

Assuming that Mr. Pickelsimer is correct and the Contribution Agreement is not an executory contract, the ultimate relief that Mr. Pickelsimer seeks—prohibiting the transfer of the Contribution Agreement to shore up his arguments in the State Court Action—is not available to him because Energy L.P. can assign the Contribution Agreement to MCE Acquisition pursuant to Bankruptcy Code § 363.[8]    As this Court has held, Section 363 authorizes the transfer of a debtor's rights and obligations under a *non-executory* contract to a buyer in connection with a 363 sale. *See DB Structured Products, Inc. v. American Home Mortg. Holdings, Inc. (In re American Home Mortg. Holdings, Inc.)*, 402 B.R. 87, 94 (Bankr. D. Del. 2009) ("[S]ection 363 of the Bankruptcy Code permits a debtor to transfer its rights and obligations under a non-executory contract[.]"), *citing Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 264 (3d Cir. 2000).

8.      Notably, if (as Mr. Pickelsimer argues) the contract is non-executory, the requirements of Section 365—including the provision of cure payments and adequate assurance—for assuming and assigning the contract are not applicable.    *See In re American Home Mortg. Holdings, Inc.*, 402 B.R. at 103-04 (holding that requirement that party provide adequate assurance of future performance was not necessary for non-executory contract to be

---

[7]      Mr. Pickelsimer's reliance on *In re West Electronics, Inc.*, 852 F.2d 79, 82-84 (3d Cir. 1988)—which says nothing about assignment of non-executory contracts—is completely misplaced.    In *West Electronics*, the Court of Appeals for the Third Circuit addressed only the ability of the debtor to assume an executory contract for the production of military equipment under the "hypothetical" test employed in the Third Circuit under Bankruptcy Code § 365(c)(1)(A).    This decision has no bearing on the assignability of the Contribution Agreement as a non-executory contract.

[8]      To remove any doubt regarding the transfer of Energy L.P.'s rights under the Contribution Agreement, the Trustee and MCE intend to amend the Asset Purchase Agreement prior to the Sale Hearing to provide that any non-executory "Assigned Contracts" that are part of the "Purchased Assets" will be conveyed to the MCE Acquisition under Section 363 (rather than Section 365) of the Bankruptcy Code.

transferred pursuant to Section 363).  Nevertheless, in an abundance of caution, the Trustee and MCE Acquisition address Mr. Pickelsimer's arguments under Section 365 of the Bankruptcy Code below.

**B.**    **Section 365(c) Does Not Prohibit Assignment of the Contribution Agreement.**

9.    Mr. Pickelsimer argues, in a cursory fashion, that the Contribution Agreement cannot be assigned under Section 365(c)(1) or (2) of the Bankruptcy Code.  *See* Objection, ¶ 17 & n. 1.  Mr. Pickelsimer is wrong.  *First*, if the Contribution Agreement is not executory, as Mr. Pickelsimer contends, Section 365(c) is not even triggered.  *Second*, Section 365(c)(1) does not prohibit assignment of the Contribution Agreement—even assuming that the Contribution Agreement falls within the general category of "non-assignable" agreements under Section 365(c)— because the relevant parties to the contract have consented to its assignment.[9] The Contribution Agreement expressly provides that Energy L.P. may assign the Contribution Agreement, with the consent of Kristian Kos and Dikran Tourian.  *See* Contribution Agreement, § 11.07.  Mr. Kos and Mr. Tourian, who are the indirect owners of MCE Acquisition (as disclosed in the Sale Motion and Bid Procedures Notice), have consented to Energy L.P.'s assignment of the Contribution Agreement.  Finally, the Contribution Agreement is not an agreement that obligates the nondebtor party (Mr. Pickelsimer) to "advance new cash or credit in exchange for the debtor's note (a debt security) or its stock (an equity security)" and thus does not fall within Section 365(c)(2)'s prohibition on assignment, as Mr. Pickelsimer contends.  *See In re Teligent, Inc.*, 268 B.R. 723, 737 (Bankr. S.D.N.Y. 2001).

---

[9]    *See* 11 U.S.C. § 365(c)(1)(B), which provides that the trustee may not assume or assign certain executory contracts if the counterparty "does not consent to such assumption or assignment."

C.    **No Cure Payment is Due Mr. Pickelsimer.**

10.    Mr. Pickelsimer's also argues that the Contribution Agreement cannot be assumed and assigned without paying him a cure payment of approximately $1.3 million, allegedly owed to him under Section 3.01 of the Contribution Agreement.  Mr. Pickelsimer's cure objection fails for two reasons: (1) under the express earn-out formula set forth in the Contribution Agreement the Earn-out Amount had no value; and (2) even if the Earn-Out Amount had a value greater than zero, the consideration due the MCE owners was a pro-rata share of common units in Energy L.P. equity, not a cash payment.

11.    Section 3.01 of the Contribution Agreement provides as follows with respect to payment of the Earn-out Amount:

> (a)    On or before April 24, 2015, Acquirer shall in good faith determine the Earn-out Amount, calculated as the amount equal to: 5.0 times the EBITDA attributed to the Acquired Companies for the trailing nine month period ended March 31, 2015, on an annualized basis, less (i) the Initial Consideration, (ii) the Partnership Investments for the period from the Closing Date through March 31, 2015 and (iii) the Transaction Costs of the MCE Parties paid by Acquirer pursuant to Section 8.04; *provided that,* in no event shall the Earn-out Amount exceed One Hundred and Twenty Million Dollars ($120,000,000).

> (b)    On or before May 1, 2015, Acquirer shall issue to the MCE Owners collectively *a number of Common Units equal to the Earn-out Amount divided by the Volume Weighted Average Price of the Common Units for the twenty (20) Trading Days ending three Trading Days prior to the date of such payment (the "**Earn-out Common Unit Consideration**").*  The Earn-Out Common Unit Consideration shall be allocated among the MCE Owners in accordance with the allocation set forth in Schedule 2.01.

*See* Contribution Agreement, § 3.01(a), (b) (emphasis added).    Under the Contribution Agreement, the MCE owners were entitled to receive Earn-out Common Unit Consideration only if the Acquired Companies (MCLP and MCGP) met a specified earnings threshold.  The Acquired Companies did not meet the earnings' goal, and the right to receive Earn-out Common Unit Consideration was never triggered.  As publicly disclosed in Energy L.P.'s Quarterly Report

for the period ended March 31, 2015, the contingent Earn-Out Amount under the Contribution Agreement had no value.[10]

12.     Further, even if the Earn-out Amount had been greater than zero, the consideration to be provided to the MCE Owners was common units of Energy L.P. (a chapter 7 debtor).  The Contribution Agreement provides that, in satisfaction of its obligation to pay the Earn-out Amount, if any, Energy L.P. "shall issue to the MCE Owners collectively a number of Common Units equal to the Earn-out Amount" divided by the weighted average trading price of the Common Units for twenty days prior to such payment "ending three Trading Days prior to the date of such payment."  *See* Contribution Agreement, § 3.01(b).   Mr. Pickelsimer does not cite any contractual provision or other theory that would entitle him to cash compensation for the alleged Earn-Out Amount.

13.     As explained above, the contingent Earn-Out Amount was never realized.  But even if a positive Earn-Out Amount had been achieved, all that Mr. Pickelsimer could conceivably be entitled to was Earn-out Common Unit Consideration, not cash.

### D.     The Objection Does Not State a Valid Request for Adequate Assurance.

14.     Mr. Pickelsimer asserts that he is entitled to adequate assurance of future performance under Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  *See* Objection, ¶ 14, 18.  To validly state a request for adequate assurance, Mr. Pickelsimer must identify a specific contract term that is "integral to the bargain struck between the parties" and the performance of which will give Mr. Pickelsimer "the full benefit of his bargain."  *In re*

---

[10]     *See* New Source Energy Partners L.P., Quarterly Report (Form 10-Q) for the Period Ended March 31, 2015, at 27 ("Based on actual results for MCE for the nine month period ending March 31, 2015, the MCE Contingent Consideration was deemed to have no value at March 31, 2015."), which is annexed as Exhibit "C" hereto.

*Fleming Cos.*, 499 F.3d 300, 306 (3d Cir. 2007). Mr. Pickelsimer's generalized and vague "request" for adequate assurance of future performance under the Contribution Agreement should be overruled.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court overrule the Objection and grant such other and further relief as is just and proper.

Dated: June 22, 2016

ARCHER & GREINER
A Professional Corporation

By:  _/s/  Alan M. Root_____.
     Alan M. Root (No. 5427)
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801
Telephone:  302-777-4350
Facsimile:  302-777-4352
Email:  aroot@archerlaw.com

*Attorneys for the Chapter 7 Trustee*

COLE SCHOTZ P.C.

By: /s/ Patrick J. Reilley_____
    Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
E-Mail: preilley@coleschotz.com

and

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
Dianne Coffino, Esq.
Martin Beeler, Esq.
Facsimile: (212) 841-1010
Email:  dcoffino@cov.com; mbeeler@cov.com

*Attorneys for MCE Acquisition, LLC*

10

114477772v1