**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| NEW SOURCE ENERGY PARTNERS, L.P., *et. al.*, | Case No. 16-10642 (CSS) |
| Debtors. | Jointly Administered |
| DAVID W. CARICKHOFF, solely in his capacity as Chapter 7 Trustee of New Source Energy Partners, L.P., *et. al.*, | Adversary No. 19 - _____ (CSS) |
| Plaintiff, | |
| v. | |
| DANNY PICKELSIMER, | |
| Defendant. | |

**COMPLAINT TO DISALLOW OR, IN THE ALTERNATIVE, SUBORDINATE PROOF OF CLAIM NO. 21 FILED BY DANNY PICKELSIMER**

Plaintiff, David W. Carickhoff (the "Trustee" or "Plaintiff"), solely in his capacity as the chapter 7 trustee for the estates of the above-captioned debtors (the "Debtors"), by and through his undersigned attorneys, files this Complaint (the "Complaint") against Danny Pickelsimer ("Mr. Pickelsimer" or "Defendant"), and respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Mr. Pickelsimer has filed a general unsecured claim in the amount of $1,408,212, based on a "contribution agreement." However, Mr. Pickelsimer fails to explain in even the most basic terms how the contribution agreement entitles him to a claim or how he calculated

such claim. Mr. Pickelsimer's claim represents the largest remaining general unsecured claim in these cases.[1]

2.  Even though it is not his burden to try and identify potential claims, the Trustee has reviewed the contribution agreement and has found no basis for Mr. Pickelsimer to assert a claim (let alone a claim in excess of $1 million). Mr. Pickelsimer previously received all of the consideration he was entitled to under the contribution agreement and is not entitled to any contingent or deferred consideration.

3.  Finally, even if Mr. Pickelsimer was entitled to any additional consideration, the contribution agreement expressly provides that such consideration was to be satisfied via issuance of limited partnership units in Debtor New Source Energy Partners, L.P. Any claim for damages related to an alleged failure of the Debtors to issue such limited partnership interests must be subordinated pursuant to section 510(b) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4.  This adversary proceeding is commenced pursuant to Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 502, and 510(b) of Title 11 of the United States Code (the "Bankruptcy Code").

5.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a "core" proceeding to be heard and determined by the this Court pursuant to 28 U.S.C. § 157(b)(2).

6.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] While other claims were filed in excess of this amount, such claims have been withdrawn as part of a global settlement.

**PARTIES**

7. On March 15, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

8. On March 16, 2016, the Trustee was appointed as chapter 7 trustee of the Debtors' estates pursuant to section 701(a) of the Bankruptcy Code. The section 341(a) meeting of creditors was held and concluded on April 11, 2016.

9. Upon information and belief, Defendant, Mr. Pickelsimer is an individual domiciled in the state of Oklahoma. Upon further information and belief, until July 2015, Mr. Pickelsimer served as Vice-President, Business Development of MidCentral Energy Services, LLC, a subsidiary of the Debtors as of the Petition Date.

10. On December 2, 2016, Mr. Pickelsimer filed proof of claim no. 21 (as subsequently amended, the "Proof of Claim") in the chapter 7 bankruptcy case of Debtor New Source Energy Partners, L.P. ("NSLP").

**BACKGROUND**

**A.    The Prepetition Contribution Agreement**

11. Prior to the Petition Date, NSLP, on the one hand, and (i) MCE, LLC ("MCE") and (ii) the members of MCE (including Mr. Pickelsimer, the "MCE Owners"), on the other hand, entered into that certain Contribution Agreement dated as of November 12, 2013 (the "Contribution Agreement").[2]

12. Pursuant to the terms of the Contribution Agreement, Debtor NSLP acquired all of the outstanding (a) limited partner interests in MCE LP ("MCLP") and (b) equity interests in MCE GP, LLC ("MCGP") (the "Acquired Equity Interests"). In exchange for the acquisition,

---

[2] A true and correct copy of the Contribution Agreement is attached hereto as Exhibit A.

NSLP agreed to provide certain consideration to the MCE Owners, all of which, as further described below, was payable in the form of equity in NSLP.

13. As initial consideration (the "Initial Consideration") for the Acquired Equity Interests, *inter alia*, Debtor NSLP agreed to issue 1,847,265 common units[3] in NSLP to the MCE Owners, including Mr. Pickelsimer, in accordance with an allocation schedule attached to the Contribution Agreement (*see* Contribution Agreement § 2.02(ii)).  Mr. Pickelsimer has admitted that he received his allocated portion of the Initial Consideration. [*See* Dkt. No. 73 at ¶ 9 (wherein Mr. Pickelsimer states that the Debtors issued the Initial Consideration to him).]

14. As additional consideration for transfer of the Acquired Equity Interests to NSLP, the MCE Owners, including Mr. Pickelsimer, had the potential to receive an earn-out (the "Earn-Out") if the "Acquired Companies" (MCLP and MCGP) met minimum earnings thresholds. (*See* Contribution Agreement §§ 2.02(y) & 3.01(a)). Specifically, section 3.01(a) of the Contribution Agreement provides an express formula for calculating the amount of the Earn-Out (the "Earn-Out Amount"), if any, as follows:

> On or before April 24, 2015, Acquirer shall in good faith determine the Earn-out Amount, calculated as the amount equal to: 5.0 times the EBITDA attributed to the Acquired Companies for the trailing nine month period ended March 31, 2015, on an annualized basis, less (i) the Initial Consideration, (ii) the Partnership Investments for the period from the Closing Date through March 31, 2015 and (iii) the Transaction Costs of the MCE Parties paid by Acquirer pursuant to Section 8.04; *provided that,* in no event shall the Earn-out Amount exceed One Hundred and Twenty Million Dollars ($120,000,000).

(Contribution Agreement, § 3.01(a)).

15. As set forth in section 3.01(b) of the Contribution Agreement, the Earn-Out Amount, if calculated at an amount greater than zero, was to be satisfied by issuance of

---

[3] As set forth in the Contribution Agreement common units means common units representing limited partner interests in Debtor NSLP.

4

additional common units in NSLP to the MCE Owners, including Mr. Pickelsimer (the "Earn-Out Common Unit Consideration"). Specifically, section 3.01(b) of the Contribution Agreement provides:

> On or before May 1, 2015, Acquirer shall issue to the MCE Owners collectively *a number of Common Units equal to the Earn-out Amount* divided *by the Volume Weighted Average Price of the Common Units for the twenty (20) Trading Days ending three Trading Days prior to the date of such payment (the "**Earn-out Common Unit Consideration**")*. The Earn-Out Common Unit Consideration shall be allocated among the MCE Owners in accordance with the allocation set forth in Schedule 2.01.

(Contribution Agreement, § 3.01(b)) (emphasis added).

16. As set forth in the publicly filed *New Source Energy Partners L.P., Quarterly Report (Form 10-Q) for the Period Ended March 31, 2015* (the "10-Q"), the contingent Earn-Out Amount under the Contribution Agreement had no value and the obligation to issue the Earn-Out Common Unit Consideration was never triggered. (*See* 10-Q at 27) ("Based on actual results for MCE for the nine month period ending March 31, 2015, the MCE Contingent Consideration was deemed to have no value at March 31, 2015.") [4]

### B.   The Trustee's Sale of the Acquired Equity Interests

17. On June 24, 2016, this Court entered an Order authorizing the Trustee to, *inter alia*, sell the Acquired Equity Interests to MCE Acquisition, LLC (the "Equity Sale") [Dkt. No. 82]. The Trustee closed on the Equity Sale on July 12, 2016. [*See* Dkt. No. 280].

18. In connection with the Equity Sale, the Trustee listed the Contribution Agreement as a contract that potentially may be subject to assumption and assignment to the successful buyer [*see* Dkt. No. 66]. On June 15, 2016, Mr. Pickelsimer filed an objection to the assumption and assignment of the Contribution Agreement [Dkt. No. 73] (the "Cure Objection").

---

[4] A true and correct copy of the 10-Q is attached hereto as Exhibit B.

19. In the Cure Objection, Mr. Pickelsimer argues, among other things, that he is owed $1,318,212 (the "Cure Amount"), as a result of NSLP's alleged failure to issue the Earn-Out Common Unit Consideration pursuant to the Contribution Agreement (*see* Cure Objection at ¶¶ 9-11).[5]

20. The Cure Objection does not provide any detail on how Mr. Pickelsimer calculated the Cure Amount. Nor does the Cure Objection address the fact that (i) the Debtors determined (and publicly reported) that the Earn-Out Amount under the Contribution Agreement had no value or (ii) that, even if it had value, the Earn-Out Amount was to be paid by issuance of common units in NSLP by way of the Earn-Out Common Unit Consideration – and not cash.

**C.   Mr. Pickelsimer's Proof of Claim**

21. On December 2, 2016, Mr. Pickelsimer filed the Proof of Claim.[6] The Proof of Claim asserts a general unsecured claim in the amount of $1,408,212, based on a "contribution agreement." It says nothing more. It does not set forth how the claim amount is calculated or which provisions of the Contribution Agreement give rise to the alleged claim. In fact, the Proof of Claim does not even attach the Contribution Agreement.

22. The Trustee assumes – but given the lack of information does not know -- that the basis for the Proof of Claim is the same as what Mr. Pickelsimer asserted in the Cure Objection

---

[5] The Trustee and the buyer of the Acquired Equity Interests filed a joint reply to the Cure Objection making many of the same arguments asserted in this Complaint. Given the pending Cure Objection, a decision on assumption and assignment of the Contribution Agreement was deferred, allowing the Equity Sale to close in the interim. The buyer of the Acquired Equity Interests later determined that it did not want to take an assumption and assignment of the Contribution Agreement, thereby making the Cure Objection moot.

[6] A true and correct copy of the Proof of Claim is attached hereto as Exhibit C.

(*i.e.,* damages associated with an alleged failure to issue the Earn-Out Common Unit Consideration pursuant to the Contribution Agreement).[7]

## COUNT I

### Objection to Proof of Claim Pursuant to 11 U.S.C. § 502 – Lack of *Prima Facie* Validity

23. Plaintiff repeats and reasserts the allegations of the preceding paragraphs as if set forth fully herein.

24. The Proof of Claim attaches no facts or documents to support Mr. Pickelsimer's claim, which exceeds $1.4 million. Accordingly, the Trustee has no ability to conclusively determine the validity of the Proof of Claim or the claim amount asserted therein. Instead, the Trustee is left to guess at the basis for the Proof of Claim based solely on what Mr. Pickelsimer asserted in connection with his Cure Objection.[8]

25. To comply with the requirements for filing a claim, "a claimant must allege facts sufficient to support a legal basis for the claim." *In re Planet Hollywood Int'l*, 274 B.R. 391, 395 (Bankr. D. Del. 2001).

26. Because Mr. Pickelsimer fails to allege any facts to support his Proof of Claim, the claim is not *prima facie* valid and should be disallowed in full. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

WHEREFORE, Plaintiff respectfully requests that the Bankruptcy Court enter judgment in his favor:

    a. Disallowing the Proof of Claim in full;

---

[7] Notably, however, the claim amount asserted in the Proof of Claim ($1,408,212) is different than the Cure Amount asserted in the Cure Objection ($1,318,212).

[8] Even the Cure Objection does not explain how Mr. Pickelsimer calculated the amount of his claim.

      b.      awarding Plaintiff his reasonable attorneys' fees and costs pursuant to Bankruptcy Rule 7054; and

      c.      granting such other and further relief as may be just and proper.

## COUNT II

### Objection to Proof of Claim Pursuant to 11 U.S.C. § 502 – No Liability

27.    Plaintiff repeats and reasserts the allegations of the preceding paragraphs as if set forth fully herein.

28.    Mr. Pickelsimer has previously admitted in his Cure Objection that he received the Initial Consideration owed under the Contribution Agreement. Accordingly, NSLP cannot have any liability for the Initial Consideration.

29.    Accordingly, the Trustee is left to assume that the basis for the Proof of Claim is the same as what Mr. Pickelsimer asserted in the Cure Objection (*i.e.,* damages associated with an alleged failure to issue the Earn-Out Common Unit Consideration pursuant to the Contribution Agreement). However, NSLP has no liability with respect to the Earn-Out Common Unit Consideration because the conditions precedent to issuance were not met.

30.    As set forth in section 3.01(b) of the Contribution Agreement, NSLP's obligation to issue the Earn-Out Common Unit Consideration to Mr. Pickelsimer was contingent upon the Earn-Out Amount having a value in excess of zero.

31.    As set forth in NSLP's 10-Q, the Earn-Out Amount, as calculated pursuant to section 3.01(a) of the Contribution Agreement, "was deemed to have no value at March 31, 2015."

32.    Because the Earn-Out Amount had no value as of March 31, 2015, NSLP's obligation to issue the Earn-Out Common Unit Consideration to Mr. Pickelsimer was never triggered.

33. Accordingly, NSLP has no liability to Mr. Pickelsimer.

WHEREFORE, Plaintiff respectfully requests that the Bankruptcy Court enter judgment in his favor:

    a. Disallowing the Proof of Claim in full;

    b. awarding Plaintiff his reasonable attorneys' fees and costs pursuant to Bankruptcy Rule 7054; and

    c. granting such other and further relief as may be just and proper.

## COUNT III

### Subordination of Proof of Claim Pursuant to 11 U.S.C. § 510(b)

34. Plaintiff repeats and reasserts the allegations of the preceding paragraphs as if set forth fully herein.

35. In the alternative, the Proof of Claim must be subordinated pursuant to section 510(b) of the Bankruptcy Code.

36. Section 510(b) of the Bankruptcy Code provides in relevant part that

> For the purpose of distribution under this title, a **claim arising from rescission of a purchase or sale of a security of the debtor** or of an affiliate of the debtor, **for damages arising from the purchase or sale of such a security,** or for reimbursement or contribution allowed under section 502 on account of such a claim, **shall be subordinated to all claims or interests that are senior to or equal the claim** or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b)(emphasis added).

37. The Proof of Claim is subject to mandatory subordination under section 510(b) of the Bankruptcy Code so long as (i) Mr. Pickelsimer is a purchaser of a security and (ii) the claim relates to damages arising from such purchase.

9

*Mr. Pickelsimer is a Purchaser of a Security*

38.     There is a "low bar" for determining whether Mr. Pickelsimer fits the first requirement of 510(b). *In re Int'l Wireless Commc'ns Holdings, Inc.,* 68 F. App'x 275, 277 (3d Cir. 2003). The Court need only examine the statutory definitions of "purchaser" and "security." *Id.* Section 101(43) of the of the Bankruptcy Code defines a "purchaser" as any "transferee of a voluntary transfer ..." and section 101(49)(A)(xiii) includes limited partnership interests amongst the various forms of security.

39.     In exchange for the transfer of the Acquired Equity Interests to NSLP, Mr. Pickelsimer voluntarily agreed to receive the guaranteed Initial Consideration and contingent consideration in the form of the Earn-Out Common Unit Consideration. Both the Initial Consideration and the Earn-Out Common Unit Consideration, if earned, were payable in common units of NSLP, and not in cash. Accordingly, because he voluntarily agreed to receive consideration in the form of equity in NSLP, Mr. Pickelsimer was a purchaser of a security for purposes of section 510(b) of the Bankruptcy Code. *Int'l Wireless Commc'ns Holdings, Inc.,* 68 F. App'x at 277 (contract for exchange of shares of debtor-corporation for transferees' stock in another company constituted "purchase" of shares, for statutory subordination purposes); *In re Med Diversified, Inc.*, 461 F.3d 251, 257 (2d Cir. 2006) (noting the "uniform determination of courts… that those who voluntarily bargain to become investors or shareholders…" should be treated as purchasers of security for purposes of 510(b) of the Bankruptcy Code).

*The Alleged Damages Arise from the Purchase of a Security*

40. Although not explicit in the Proof of Claim, Mr. Pickelsimer's Cure Objection states that his claims arise from damages associated with NSLP's alleged failure to issue the Earn-Out Common Unit Consideration pursuant to the Contribution Agreement.

41. The Third Circuit -- along with many other Courts -- has held that damage claims based on alleged failure of a debtor to issue securities "arise from" a purchase of securities and are subject to mandatory subordination. *See Int'l Wireless Commc'ns Holdings, Inc.*, 68 F. App'x at 277 (damages claim for non-delivery of contingent additional consideration in the form of shares or warrants was subject to subordination under 510(b) of the Bankruptcy Code); *see also Med Diversified*, 461 F.3d 251 (former executive employee's claim against debtor, based on debtor's failure to issue its common stock to employee in exchange for his stock in another company, allegedly in violation of the parties' termination agreement, was a claim "arising from" the purchase of the debtor's stock within the meaning of section 510(b) of the Bankruptcy Code); *In re Betacom of Phoenix, Inc.,* 240 F.3d 823, 832 (9th Cir.2001) (subordinating damages for nondelivery of an equity security).

42. Based on the foregoing, the Proof of Claim is subject to mandatory subordination under section 510(b) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Bankruptcy Court enter judgment in his favor:

    a. subordinating, pursuant to section 510(b) of the Bankruptcy Code, any portion of the Proof of Claim which asserts damages in connection with NSLP's alleged failure to issue limited partnership units;

      b.    awarding the Plaintiff his reasonable attorneys' fees, and costs pursuant to Bankruptcy Rule 7054; and

      c.    granting such other and further relief as may be just and proper.

Dated: February 7, 2019

By: /s/ *Alan M. Root*
Alan M. Root (5427)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
Facsimile: 302-777-4352
Email: aroot@archerlaw.com

*Attorneys for the Chapter 7 Trustee*

215917578v2